UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 26-mj-08456-RMM

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JOSEPH JEROME, JR.,

Defendant.

_____/

## CRIMINAL COVER SHEET

1.     Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

       Yes          X **No**

2.     Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

       Yes          X **No**

3.     Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

       Yes          X **No**

                                        Respectfully submitted,

                                        JASON A. REDING QUIÑONES
                                        UNITED STATES ATTORNEY

                              BY:    _____
                                        JOHN C. McMILLAN
                                        ASSISTANT UNITED STATES ATTORNEY
                                        Admin. No. A5500228
                                        500 S. Australian Ave., Suite 400
                                        West Palm Beach, FL 33401
                                        Office:    (561) 820-8711
                                        John.mcmillan@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>JOSEPH JEROME, JR.<br>_____<br>*Defendant(s)* | )<br>)<br>)  Case No.  26-mj-08456-RMM<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ 10/14/2025 - 6/11/2026 _____ in the county of _____ Palm Beach _____ in the

_____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1), 841(b)(1)(B), 841(b)(1)(C)<br>18 U.S.C. § 924(c)(1)(A)<br>18 U.S.C. §§ 922(g)(1), 924(a)(8) | Possession with Intent to Distribute Controlled Substances (fentanyl; cocaine base; methamphetamine);<br>Possession of a firearm in furtherance of a federal drug trafficking crime; and<br>Possession of firearms by a convicted felon |

This criminal complaint is based on these facts:

See attached Affidavit

FILED BY_____ *TM* _____ D.C.

**Jun 22, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Benjamin Garnett, Special Agent, ATF
_____
*Printed name and title*

Subscribed and sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (Facetime).

Date: 6/22/26

_____
*Judge's signature*

City and state: _____ West Palm Beach, Florida _____

Hon. Ryon M. McCabe, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A CRIMINAL COMPLAINT**
Case No. 26-mj-08456-RMM

I, Benjamin Garnett, first being duly sworn, does hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the West Palm Beach Field Office. I have been employed as a Special Agent with ATF since March 2020.  As part of my duties as a Special Agent, I am responsible for conducting investigations of violations of federal laws, including but not limited to, those pertaining to firearms, narcotics, and firearms trafficking. I have conducted and participated in numerous investigations involving, but not limited to, the illegal possession and "straw purchasing" of firearms, carjacking, Hobbs Act Robbery, narcotics trafficking, and possession of a firearm in furtherance of narcotics trafficking.

2.      Your affiant makes this Affidavit in order to establish probable cause to believe that, in the Southern District of Florida, Joseph JEROME, Jr. ("JEROME") did: (a) knowingly possess a firearm as a convicted felon in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); (b) did distribute a controlled substance, to wit: twenty-eight (28) grams or more of cocaine base, commonly known as "crack cocaine," a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B); (c) did distribute a controlled substance, to wit: forty (40) grams or more of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, commonly known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B); (d) did distribute a controlled substance, to wit: a mixture containing methamphetamine, a Schedule II substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C); and (e) did possess

a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A).

3. The statements contained in this Affidavit are based on my personal knowledge, as well as information provided by other individuals, including other law enforcement officials and my review of records and other evidence obtained during the course of this investigation. I have included only those facts that I believe are necessary to establish probable cause in support of an arrest warrant.

## PROBABLE CAUSE

### Case Initiation

4. On or about October 10, 2025, a Palm Beach County Sheriff's Office documented Confidential Informant ("CI"), who has past been proven reliable and truthful, provided law enforcement with the phone number and identification of a suspected firearms trafficker in Palm Beach County, Florida. The number provided by the CI was ***-***-7584. The phone number was queried in law enforcement databases, and the queries revealed the user of that phone number is JEROME. The CI confirmed JEROME was the individual they knew to be trafficking firearms and using that phone number.

### Controlled Purchase of Two Firearms – October 14, 2025

5. On or about October 14, 2025, ATF Special Agent Mark Finnamore, acting in an undercover capacity (herein referred to as "UC-1"), exchanged telephonic communications with JEROME to arrange the purchase of two (2) firearm from JEROME to take place on October 14, 2025. JEROME agreed to conduct the purchase at the O'Reilly Auto Parts Store, located at 1720 W Blue Heron Blvd, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio recorded, and all text communications were preserved.

2

6.      In the early afternoon hours of October 14, 2025, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the O'Reilly Auto Parts Store, located at 1720 W Blue Heron Blvd, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in the parking lot of the store. Shortly thereafter, UC-1 observed JEROME arrive at the O'Reilly Auto Parts Store driving a white Dodge Ram bearing Florida license plate RHIB68. A law enforcement query of the license plate indicated the vehicle was registered to JEROME. After arriving, JEROME exited the Dodge Ram and entered the UC vehicle. Once inside the UC vehicle, JEROME handed UC-1 a black bag labeled "Adidas." Inside the bag UC-1 observed a silver in color Ruger Model SP101, caliber .357 Magnum revolver, bearing serial number 571-91372, and a Rossi Model M685, .38 caliber revolver, bearing serial number D849451. UC-1 provided JEROME with $700 in ATF Investigative Funds in exchange for the two firearms. After the transaction JEROME departed the UC vehicle, and UC-1 departed the deal location. A query of the National Crime Information Center ("NCIC") indicated the Rossi Model M685 .38 caliber revolver bearing serial number D849451 was reported stolen.

**Controlled Purchase of Firearm – October 23, 2025**

7.      On or about October 23, 2025, UC-1

8.      exchanged telephonic communications with JEROME to arrange the purchase of a firearm from JEROME to take place on October 23, 2025. JEROME agreed to conduct the purchase at the O'Reilly Auto Parts Store, located at 1720 W Blue Heron Blvd, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio recorded, and all text communications were preserved.

9.      On or about October 23, 2025, in the early afternoon hours, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the O'Reilly

3

Auto Parts Store, located at 1720 W Blue Heron Blvd, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in the parking lot of the store. Shortly thereafter, UC-1 observed JEROME arrive at the O'Reilly Auto Parts Store driving a white Dodge Ram bearing Florida license plate RHIB68. After arriving, JEROME exited the Dodge Ram and entered the UC vehicle. Once inside the UC vehicle, JEROME removed a black Ruger model LCP, .380 caliber semiautomatic pistol bearing serial number 372102176, from his shorts pocket and handed it to UC-1. UC-1 provided JEROME with $300 in ATF Investigative Funds in exchange for the firearm. After the transaction JEROME departed the UC vehicle, and UC-1 departed the deal location.

### Controlled Purchase of Firearm – October 29, 2025

10.     On or about October 29, 2025, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of a firearm from JEROME to take place on October 29, 2025. JEROME agreed to conduct the purchase at the O'Reilly Auto Parts Store, located at 1720 W Blue Heron Blvd, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

11.     On or about October 29, 2025, in the early afternoon hours, ATF UC-1 and ATF UC-2, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the O'Reilly Auto Parts Store, located at 1720 W Blue Heron Blvd, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in the parking lot of the store. Shortly after, UC-1 observed JEROME arrive at the O'Reilly Auto Parts Store driving a white Dodge Ram bearing Florida license plate RHIB68. After arriving, JEROME exited the Dodge Ram and approached the driver's side window of the UC vehicle and made contact with the UCs. Once at the UC vehicle, JEROME handed UC-1 a black in color Sig Sauer model P365,  9mm caliber semiautomatic pistol bearing serial number 66F569601 wrapped in a blue t-shirt. UC-1 provided

4

JEROME with $700 in ATF Investigative Funds in exchange for the firearm. UC-1 then introduced JEROME to UC-2 and UC-2 spoke to JEROME regarding the trafficking of firearms and how UC-2 would take the firearms sold by JEROME up to New York and Canada. After the transaction JEROME departed the area of the UC vehicle, and the UCs departed the deal location.

### Controlled Purchase of Firearm – December 8, 2025

12. On or about December 8, 2025, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of a firearm from JEROME to take place on December 8, 2025. JEROME agreed to conduct the purchase at JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio recorded, and all text communications were preserved.

13. On or about December 8, 2025, in the early afternoon hours, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in front of JEROME's residence. Shortly thereafter, UC-1 observed JEROME exit 1533 W 26th Court, Apartment 1A, Riviera Beach, Florida and approach the front passenger door of the UC vehicle. Once at the UC vehicle, JEROME removed a Smith and Wesson model M&P Shield, 9mm caliber semiautomatic pistol bearing serial number JPR0947, from his shorts pocket and placed it on the front passenger seat of the UC vehicle. UC-1 provided JEROME with $700 in ATF Investigative Funds in exchange for the firearm. After the transaction JEROME departed the area of the UC vehicle, and UC-1 departed the deal location.

### Controlled Purchase of Firearm and Narcotics – January 8, 2026

14. On or about January 8, 2026, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of a firearm and a half ounce of crack cocaine from JEROME

5

to take place on January 8, 2026. JEROME agreed to conduct the purchase at JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

15. On or about January 8, 2026, in the early afternoon hours, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in front of JEROME's residence. Shortly after, UC-1 observed JEROME exit 1533 W 26th Court, Apartment 1A, Riviera Beach, Florida and enter the front passenger seat of the UC vehicle. Once in the UC vehicle, JEROME removed a clear plastic bag containing an off-white rock-like substance, suspected crack cocaine, and a Taurus model G2S, 9mm caliber semiautomatic pistol bearing serial number AEM890603, from his pocket and placed both items on the center console of the UC vehicle. UC-1 provided JEROME with $1,100 in ATF Investigative Funds in exchange for the firearm and narcotics. UC-1 then asked JEROME if he had additional crack cocaine because the UC had additional money, JEROME stated he did not have more crack cocaine at that time and UC-1 would have to come back for the additional crack cocaine. UC-1 then asked JEROME if he had fentanyl and JEROME stated he could sell UC-1 approximately 4 grams of fentanyl for $300. UC-1 agreed and JEROME exited the UC vehicle and returned to his residence. A short time later, JEROME exited his residence and returned to the UC vehicle, entering into the front passenger seat. Once in the vehicle, JEROME removed a small clear plastic baggie containing a brown powder substance, suspected fentanyl, from his pocket and handed it to UC-1. UC-1 informed JEROME that selling drugs is something UC-1 does on the side, but UC-1's main business is exporting firearms to Canada and New York. UC-1 then

6

provided JEROME with $300 in ATF Investigative Funds. After the transaction, JEROME departed the area of the UC vehicle, and UC-1 departed the deal location.

16.    Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive crack cocaine and packaging had an approximate weight of 15 grams. The field test positive cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the crack cocaine had a net weight of $13.516 \text{ g} \pm 0.002 \text{ g}$ and was $88\% \pm 6\%$ pure cocaine base.

17.    The suspected fentanyl from the transaction was field tested and yielded a positive result for the presence of fentanyl. The field test positive fentanyl and packaging had an approximate weight of 4.1 grams. The field test positive fentanyl was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the substance had a net weight of $3.18 \text{ g} \pm 0.01 \text{ g}$. The analysis revealed Tramadol, N-Phenyl-N-[1-(2-phenylethyl) -4-piperidinyl] propanamide (fentanyl), heroin, and xylazine were present in the substance.

**Controlled Purchase of Narcotics – January 12, 2026**

18.    On or about January 12, 2026, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of an ounce of crack cocaine from JEROME to take place on January 12, 2026. JEROME agreed to conduct the purchase at JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Palm Beach County, Southern District of Florida. During the communications exchange with UC-1 and JEROME, JEROME stated to UC-1 that he was waiting on his source of supply to arrive with the narcotics for UC-1. All phone conversations were audio recorded, and all text communications were preserved.

7

19.     On or about January 12, 2026, in the early afternoon hours, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in front of JEROME's residence. Shortly after, UC-1 placed a phone call to JEROME to inform him that UC-1 arrived. While on the phone with UC-1, JEROME asked UC-1 if they wanted "Caps" (street term for capsules containing fentanyl and/or heroin). UC-1 responded in the affirmative to purchasing the suspected fentanyl. Shortly after the phone call, UC-1 observed JEROME exit 1533 W 26th Court, Apartment 1A, Riviera Beach, Florida and enter the front passenger seat of the UC vehicle. Once in the UC vehicle, JEROME removed a clear plastic bag containing a gray powder substance of suspected fentanyl. JEROME then proceeded to remove a second clear plastic baggie from his shorts pocket which contained an off-white rock-like substance, suspected crack cocaine, and handed it to UC-1. UC-1 provided JEROME with $1,000 in ATF Investigative Funds in exchange for the narcotics. After the transaction, JEROME departed the UC vehicle, and UC-1 departed the deal location.

20.     Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive crack cocaine and packaging had an approximate weight of 29.3 grams. The field test positive cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the crack cocaine had a net weight of $27.134 \text{ g} \pm 0.002 \text{ g}$ and was $84\% \pm 6\%$ pure cocaine base.

21.     The suspected fentanyl from the transaction was field tested and yielded a positive result for the presence of fentanyl. The field test positive fentanyl and packaging had an approximate weight of 3.2 grams. The field test positive fentanyl was submitted to the DEA

8

Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the substance had a net weight of 2.14 g ± 0.01 g. The analysis revealed N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), caffeine, hydroxyzine, 4-(1-(2,3-dimethylphenyl)ethyl)-1H-imidazole (medetomidine) and xylazine were present in the substance.

**Controlled Purchase of Narcotics and Firearm – February 17, 2026**

22.     On or about February 17, 2026, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of a firearm and eight (8) grams of fentanyl from JEROME to take place on February 17, 2026. JEROME agreed to conduct the purchase at JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio recorded, and all text communications were preserved.

23.     On or about February 17, 2026, in the early afternoon hours, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in front of JEROME's residence. UC-1 then placed a call to JEROME to inform him that the UCs had arrived. Shortly thereafter, UC-1 observed JEROME exit 1533 W 26th Court, Apartment 1A, Riviera Beach, Florida and enter the front passenger seat of the UC vehicle. Once in the UC vehicle, JEROME handed UC-1 a black Smith and Wesson model M&P9, 9mm caliber semiautomatic pistol bearing serial number NJH0705, and a clear plastic baggie containing a white powdery substance of suspected fentanyl. UC-1 provided JEROME with $1,200 in ATF Investigative Funds in exchange for the firearm and narcotics. UC-1 and JEROME then began discussion regarding future deals involving fentanyl and whether JEROME could get more. JEROME stated that he can get whatever UC-1 needs and the narcotics he gets is "pure, pure."

9

JEROME went on to say that the fentanyl from his source is pure and that his source said you can "put two or three on it" which is referring to how much cutting agent you can mix with the fentanyl and still sell it. JEROME then began to describe how his customers would act when he would sell the narcotics, specifically talking about how the users would begin "nodding," which – based on his training and experience – UC-1 understood as common street terminology to refer to when an opioid user begins to lose motor function due to the strength of the narcotics. After the transaction, JEROME departed the UC vehicle, and UC-1 departed the deal location.

24.     Following the transaction, the suspected fentanyl from the transaction was field tested and yielded a positive result for the presence of fentanyl. The field test positive fentanyl and packaging had an approximate weight of 8 grams. The field test positive fentanyl was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the substance had a net weight of 7.05 g $\pm$ 0.01 g. The analysis revealed N-Phenyl-N-[1-(2-phenylethyl) -4-piperidinyl] propanamide (fentanyl) and cocaine were present in the substance.

### Controlled Purchase of Narcotics and Firearm – April 14, 2026

25.     On or about April 14, 2026, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of a firearm and a half ounce of methamphetamine from JEROME to take place on April 14, 2026. JEROME agreed to conduct the purchase at JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio recorded, and all text communications were preserved.

26.     On or about April 14, 2026, in the early afternoon hours, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Florida. Upon arrival, UC-1 parked the

UC vehicle in front of JEROME's residence. While UC-1 was arriving, UC-1 observed JEROME exit 1533 W 26th Court, Apartment 1A, Riviera Beach, Florida and enter the front passenger seat of the UC vehicle. Once in the UC vehicle, JEROME handed UC-1 a clear plastic baggie containing a crystalized substance of suspected methamphetamine and a silver and black Taurus model G2S, 9mm caliber semiautomatic pistol bearing serial number ACK424236. JEROME stated that the narcotics weighed 19 grams. UC-1 asked JEROME if it was "just meth" or something else, due to narcotics frequently being cut with other substances. JEROME replied it is "just meth." UC-1 provided JEROME with $1,000 in ATF Investigative Funds in exchange for the firearm and narcotics. UC-1 and JEROME then began discussion regarding future deals involving methamphetamine and whether JEROME could get more. JEROME stated that he usually gets a "28" referring to 28 grams or 1 ounce of methamphetamine. After the transaction, JEROME departed the UC vehicle, and UC-1 departed the deal location.

27. A query of NCIC indicated the Taurus Model G2S 9mm Pistol bearing serial number ACK424236 was reported stolen.

28. Following the transaction, the suspected methamphetamine from the transaction was field tested and yielded a positive result for the presence of methamphetamine. The field test positive methamphetamine and packaging had an approximate weight of 20.6 grams. The field test positive methamphetamine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the substance had a net weight of 19.35 g $\pm$ 0.01 g and a purity of 7.1% $\pm$ 0.8%. The analysis revealed Methamphetamine (calc. as Hydrochloride), 3,4-Methylenedioxymethamphetamine (MDMA), and Dimethyl Sulfone were present in the substance.

**Controlled Purchase of Narcotics and Firearm – May 4, 2026**

29. On or about May 4, 2026, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of a firearm and an ounce of crack cocaine from JEROME to take place on May 4, 2026. JEROME agreed to conduct the purchase at JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio recorded, and all text communications were preserved.

30. On or about May 4, 2026, in the late afternoon hours, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in front of JEROME's residence. Shortly after, UC-1 observed JEROME exit 1533 W 26th Court, Apartment 1A, Riviera Beach, Florida and enter the front passenger seat of the UC vehicle. Once in the UC vehicle, JEROME removed a clear plastic baggie containing an off-white rock-like substance, suspected crack cocaine, and handed it to UC-1. JEROME then handed UC-1 a Smith and Wesson model Bodyguard, .380 caliber semiautomatic pistol bearing serial number EBJ6753. UC-1 provided JEROME with $1,400 in ATF Investigative Funds in exchange for the firearm and narcotics. After the transaction, JEROME departed the UC vehicle, and UC-1 departed the deal location.

31. Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive crack cocaine and packaging had an approximate weight of 29.9 grams. The field test positive crack cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the crack cocaine had a net weight of **28.45 g ± 0.01 grams** and was 86% ± 6% pure cocaine base.

**Controlled Purchase of Narcotics and Firearm – May 11, 2026**

32.     On or about May 11, 2026, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of a firearm and ten (10) grams of fentanyl from JEROME to take place on May 11, 2026. JEROME agreed to conduct the purchase at JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Palm Beach County, the Southern District of Florida. All phone conversations were audio recorded, and all text communications were preserved.

33.     On or about May 11, 2026, in the late afternoon hours, UC-1, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in front of JEROME's residence. As UC-1 was arriving, UC-1 observed JEROME entering 1533 W 26th Court, Apartment 1A. Shortly after, UC-1 observed JEROME exit 1533 W 26th Court, Apartment 1A, Riviera Beach, Florida and enter the front passenger seat of the UC vehicle. Once in the UC vehicle, JEROME handed UC-1 a Bushmaster model XM-15, AR-15 variant 5.56 mm caliber semiautomatic pistol. JEROME then removed a clear plastic baggie containing a purple-colored powder, suspected fentanyl, from his pocket and placed it on the center console of the UC vehicle. UC-1 provided JEROME with $1,500 in ATF Investigative Funds in exchange for the firearm and narcotics. After the transaction, JEROME departed the UC vehicle, and UC-1 departed the deal location.

34.     Following the transaction, the suspected fentanyl from the transaction was field tested and yielded a positive result for the presence of fentanyl. The field test positive fentanyl and packaging had an approximate weight of 10.3 grams. The field test positive fentanyl was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the substance had a net weight of 9.10 g ± 0.01 g. The analysis revealed N-Phenyl-N-[1-

13

(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl) (calc. as Hydrochloride) and Lidocaine were present in the substance.

### Controlled Purchase of Narcotics and Firearm – May 12, 2026

35.     On or about May 12, 2026, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of a firearm and two (2) ounces of fentanyl from JEROME to take place on May 12, 2026. JEROME agreed to conduct the purchase at the O'Reilly Auto Parts Store, located at 1720 W Blue Heron Blvd, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio recorded and all text communications were preserved.

36.     On or about May 12, 2026, in the late afternoon hours, ATF UC-1 and UC-2, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of the O'Reilly Auto Parts Store, located at 1720 W Blue Heron Blvd, Riviera Beach, Florida. Upon arrival, the UCs parked the UC vehicle in the parking lot of the O'Reilly Auto Parts. Shortly thereafter, UC-1 observed JEROME arrive to the deal location driving a white Ford Explorer bearing Florida license plate 58ATBZ. Upon arrival, JEROME exited his vehicle and entered the front passenger seat of the UC vehicle. Once in the UC vehicle, JEROME handed UC-1 a clear plastic bag of blue/white powder, suspected fentanyl, from his left shorts pocket. While handing UC-1 the suspected narcotics he simultaneously handed UC-1 a Springfield Armory model XD-45, .45 caliber semiautomatic pistol bearing serial number US594275. UC-1 and JEROME had a brief conversation regarding the source of the narcotics being comfortable with the increase in weight of the narcotics. JEROME stated the source of the narcotics was comfortable but cautious. UC-1 provided JEROME with $5,300 in ATF Investigative Funds in exchange for the firearm and

14

narcotics. After the transaction, JEROME departed the UC vehicle, and UC-1 departed the deal location.

37.     Following the transaction, the suspected fentanyl from the transaction was field tested and yielded a positive result for the presence of fentanyl. The field test positive fentanyl and packaging had an approximate weight of 63.7 grams. The field test positive fentanyl was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis revealed the substance had a **net weight of 62.12 g ± 0.01 grams** of a mixture and substance containing N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) (calc. as Hydrochloride).

### Controlled Purchase of Narcotics – June 11, 2026

38.     On or about June 11, 2026, UC-1 exchanged telephonic communications with JEROME to arrange the purchase of four (4) ounces of crack cocaine from JEROME to take place on June 11, 2026. JEROME agreed to conduct the purchase at JEROME's residence, located 1533 W 26th Court, Riviera Beach, Palm Beach County, Southern District of Florida. All phone conversations were audio recorded and all text communications were preserved.

39.     On or about June 11, 2026, in the early afternoon hours, ATF UC-1 and UC-2, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of JEROME's residence, located at 1533 W 26th Court, Riviera Beach, Florida. Upon arrival, UC-1 parked the UC vehicle in front of JEROME's residence. Shortly after, the UCs observed JEROME exit 1533 W 26th Court, Apartment 1A, Riviera Beach, Florida and enter the front passenger seat of the UC vehicle. Once in the UC vehicle, JEROME produced a clear plastic bag of three (3) off-white rock like "cookies" of suspected crack cocaine from his right shorts pocket and handed it to UC-1. UC-1 provided JEROME with $2,800 in ATF Investigative Funds in

15

exchange for the narcotics. After the transaction, JEROME departed the UC vehicle and walked directly back to his residence, entering the front door of Apartment 1A, and the UCs departed the deal location.

40.     Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine base. The field test positive crack cocaine and packaging had an approximate weight of 110.7 grams. The field test positive crack cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are pending.

41.     Based on the records of the Palm Beach County Clerk of Courts Office, your affiant was able to determine that all times material hereto, JEROME was a convicted felon, having sustained at least the following prior convictions, each of which was punishable by imprisonment for a term exceeding one year under Florida law:

(a) On or about January 21, 2022, defendant JEROME was convicted for felon in possession of a firearm, in Palm Beach County (Florida) Circuit Court (PBCCC) Case No. 2021CF001664AMB.

(b) On or about September 24, 2012, defendant JEROME was convicted of possession of cocaine, in Palm Beach County (Florida), Case No. 2012CF008520AWB

42. All of the aforementioned firearms sold by JEROME referenced above were examined by an ATF Interstate Nexus Expert and it was determined that all firearms were manufactured outside the State of Florida and therefore, of necessity, traveled in interstate commerce by their subsequent recovery in the State of Florida.

## CONCLUSION

43.     Based on the foregoing facts, I respectfully submit that there is probable cause to believe that Joseph JEROME, Jr. ("JEROME") did: (a) knowingly possess a firearm as a convicted felon in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); (b) did distribute a controlled substance, to wit: twenty-eight (28) grams or more of cocaine base, commonly known as "crack cocaine," a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B); (c) did distribute a controlled substance, to wit: forty (40) grams or more of N-phenyl-N- [1- ( 2-phenylethyl )-4-piperidinyl] propenamide, commonly known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B); (d) did distribute a controlled substance, to wit: a mixture containing methamphetamine, a Schedule II substance, in violation of Title 21, United

[Remainder of Page Intentionally Left Blank]

17

States Code, Section 841(a)(1) and 841(b)(1)(C); and (e) did possess a firearm in furtherance of a

drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

Benjamin Garnett, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

SWORN AND ATTESTED TO ME
TELEPHONICALLY (VIA FACETIME)
BY THE APPLICANT IN ACCORDANCE
WITH THE REQUIREMENTS OF
FED. R. CRIM. P. 4(d) AND 4.1 THIS
_____ DAY OF JUNE, 2026.

**HON. RYON M. McCABE**
**UNITED STATES MAGISTRATE JUDGE**

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: _Jospeh JEROME, Jr._

**Case No**: _26-mj-8456-RMM_

**Count # 1**
**Possession with Intent to Distribute Controlled Substances**
**Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B)(iii)(28 grams or more of cocaine base), 841(b)(1)(B)(vi)(40 grams or more of fentanyl)**
* **Max. Term of Imprisonment:** Forty (40) years
* **Mandatory Min. Term of Imprisonment (if applicable):** Five (5) years
* **Max. Supervised Release:** Life
* **Max. Fine:** $5,000,000.00
* **Special Assessment:** $100.00

**Count # 2**
**Possession with Intent to Distribute a Controlled Substance**
**Title 21, United States Code, Section 841(a)(1), 841(b)(1)(C)(methamphetamine)**
* **Max. Term of Imprisonment:** twenty (20) years
* **Mandatory Min. Term of Imprisonment (if applicable):** n/a
* **Max. Supervised Release:** Life
* **Max. Fine:** $1,000,000.00
* **Special Assessment:** $100.00

**Count # 3**
**Possession of a Firearm in Furtherance of a Federal Drug Trafficking Crime**
**Title 18, United States Code, Section 924(c)(1)(A)**
* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment (if applicable):** Five (5) years' imprisonment consecutive to any other term of imprisonment imposed.
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00

**Count # 4**
**Convicted Felon in Possession of Firearms**
**Title 18, United States Code, Sections 922(g)(1), 924(a)(8)**
* **Max. Term of Imprisonment:** 15 years
* **Mandatory Min. Term of Imprisonment (if applicable):** n/a
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00